COLLECTOR OF REVENUE OF the CITY OF ST. LOUIS, Missouri, Respondent,

v.

PARCELS OF LAND ENCUMBERED WITH DELINQUENT TAX LIENS SERIAL NUMBERS I–047 AND I–048 et al., Appellants.

No. 58388.

Supreme Court of Missouri, Division No. 1.

Dec. 16, 1974.

James E. Crowe, St. Louis, Jack L. Koehr, City Counselor of the City of St. Louis, James J. Wilson, Associated City Counselor of the City of St. Louis, St. Louis, for the respondent Collector of Revenue of the City of St. Louis, Missouri.

Richard A. Stockenberg, St. Louis, for appellant; Rassieur, Long, Yawitz & Schneider, St. Louis, of counsel.

ROBERT R. WELBORN, Special Judge.

Appeal from judgment foreclosing lien for delinquent taxes. Appellants attack the constitutionality of the statute under which the action arose.

In 1971 the Missouri legislature enacted The Municipal Land Reutilization Law (MLRL), Laws of Mo. 1971–1972, pp. 158–175. §§ 92.700–92.920, RSMo Supp. 1973, V.A.M.S. Section 92.700 defines the scope of the applicability of the act as follows:

"All cities not within a county, which now have or may hereafter have a population in excess of five hundred thousand inhabitants, may elect by the enactment of an ordinance by the legislative body of such city to have the collection of delinquent and back real estate taxes regulated and controlled by the provisions of sections 92.700 to 92.920 and to operate thereunder. The election to operate under the provisions of sections 92.700 to 92.920 may be rescinded by repealing said ordinance."

MLRL establishes a procedure whereby qualifying cities can file suit to enforce tax liens in the circuit court. § 92.720. If judgment is entered in favor of the city, then the court orders the property sold by the sheriff and it fixes the time and place of the foreclosure sale. § 92.775. The land may be redeemed prior to sale by the owner or other interested party by paying the amount due. § 92.750. If at the sheriff's sale there is no bid equal to the full amount due including interest, penalties, attorney's fees and costs, the Land Reutilization Authority which is created by the statute is deemed to have bid the full amount. § 92.830. Title to any

real estate which vests in the Land Reutilization Authority is held by it in trust for the tax bill owners and taxing authorities. § 92.835. The Land Reutilization Authority is created by the statute for the management, sale, transfer and other disposition of tax delinquent lands. The declared purpose is to return land which is in a nonrevenue generating nontax producing status to effective utilization in order to provide tax revenue for the city and to provide its citizens housing, new industry and jobs. § 92.875. The Authority consisting of three commissioners, § 92.885, has the duty of administering the tax delinquent lands by assuming possession and control of same and classifying the land as to its use into three classifications, to-wit: (a) suitable for private use; (b) suitable for use by a public agency; and (c) not usable in its present condition or situation and held as a public land reserve. § 92.900. The Authority is obligated to make every effort to sell the property at a price as close to its appraised value as possible, but in any event the Authority has the power, indeed the duty, to manage, maintain, protect, rent, lease, repair, insure, alter, sell, trade, exchange or otherwise dispose of any such real estate and assemble tracts or parcels for public purposes, such as parks. § 92.900.

The City of St. Louis is presently the only city in the state not within a county. It has a population in excess of 500,000.

The City of St. Louis elected to collect its delinquent and back real estate taxes under MLRL by passing Ordinance No. 56054 which was approved December 1, 1971. On January 10, 1972, the Collector of Revenue of the City of St. Louis instituted an in rem action in the Circuit Court of the City of St. Louis under the terms of MLRL in order to foreclose alleged tax liens on certain parcels of real estate and to have the real estate sold by the sheriff. Among the parcels included in the collector's petition were two owned by appellant Mercantile Financial Corp., a Missouri

Corporation, identified as parcels 1–047 and 1–048.

Mercantile Financial Corp. filed an answer to the collector's petition in which it challenged the constitutionality of MLRL on the grounds that the statute violates the equal protection clauses of the Missouri and United States Constitutions and Article III, § 40(30), of the Missouri Constitution, V.A.M.S., as a local or special law for a new classification of cities without having a reasonable basis for establishing the new classification or excluding from coverage cities within a county, which cities now have or may hereafter have a population in excess of 500,000 inhabitants.

After the trial court ruled against Mercantile on the constitutional issues raised in the answer, an evidentiary hearing was held.

On June 12, 1973, the court entered its judgment and decree in favor of the plaintiff and against parcels 1–047 and 1–048 and ordered that the lien of delinquent tax bills be foreclosed and that the parcels be sold by the sheriff.

On June 18, 1973, Mercantile Financial Corp. and Parcels 1–047 and 1–048 duly filed notice of appeal to the Supreme Court of Missouri.

On this appeal, the sole question presented relates to the constitutionality of MLRL. Appellants first contend:

"The MLRL violates and is contrary to Article 3, § 40, ¶ 30, of the Missouri Constitution as a local or special law where a general law could be made applicable, thereby creating a new classification of cities of 500,000 inhabitants or more not within a county without having a reasonable basis for establishing this new class or excluding cities of like size which are within a county.

\*   \*   \*   \*   \*   \*

"Because the applicability of the statute is exclusively limited to cities having a

population in excess of 500,000 which are not within a county at the expense of cities of like size which are within a county the statute is an unconstitutional local or special law as there is no reasonable basis germane to the purpose of the statute for excluding cities of like size simply because they are within a county."

Article III, § 40(30), Constitution of Missouri, relied upon by appellants, provides:

"The general assembly shall not pass any local or special law:

\* \* \* \* \* \*

"(30) where a general law can be made applicable, and whether a general law could have been made applicable is a judicial question to be judicially determined without regard to any legislative assertion on that subject."

For the purpose of this provision, the distinction between special and general legislation is the distinction between legislation relating to particular persons or things of a class and legislation relating to persons or things as a class. Reals v. Courson, 349 Mo. 1193, 164 S.W.2d 306, 307–308 [1] (1942). A concise statement of the principles governing the application of this distinction is found in Reals v. Courson, 164 S.W.2d 308:

" \* \* \* Under this definition it is permissible to classify counties or other political subdivisions according to population, provided the legislation is so drawn that other counties or subdivisions may come within the terms of the law or classification in the future. And this is so even though the act may apply to one county, city or other political subdivision only at the time of its enactment. Hull v. Baumann, 345 Mo. 159, 131 S.W.2d 721; Roberts v. Benson, 346 Mo. 676, 142 S.W.2d 1058; Thomas v. Buchanan County, 330 Mo. 627, 51 S.W.2d

95; Davis v. Jasper County, 318 Mo. 248, 300 S.W. 493. \* \* \*

" 'A law may be general and yet affect only persons, things or localities of a particular class' and then the question is as to the propriety of the classification resorted to by the legislature. 59 C.J., Sec. 319, p. 732. Therefore, merely classifying by population does not in and of itself make the legislation general rather than special. A corollary of the rule is that the classification must rest on some reasonable basis and not upon a purely arbitrary division made solely for the purpose of the legislation in question. Even though the law may purport to be general if the classification by population is unreasonable, unnatural or arbitrary so that it does not apply to all persons or things similarly situated, it is then, in fact, special despite its apparent purpose. City of Lebanon v. Schneider, 349 Mo. 712, 163 S.W. 2d 588, \* \* \*; State ex inf. Barker v. Southern, 265 Mo. 275, 177 S.W. 640. 'The test of a special law is the appropriateness of its provisions to the objects that it excludes. It is not, therefore, what a law includes, that makes it special, but what it excludes.' State ex inf. Barrett v. Hedrick, 294 Mo. 21, 241 S.W. 402, 407; Colley v. Jasper County, 337 Mo. 503, 85 S.W.2d 57; Hull v. Baumann, supra. The vice in special laws is that they do not embrace all of the class to which they are naturally related. 25 R.C.L., Sec. 66, p. 818.

"Finally, the test is whether the legislative classification 'rest[s] upon some difference which bears a reasonable and just relation to the act in respect to which the classification is proposed.' State ex rel. Saline County v. Wilson, 288 Mo. 315, 335, 232 S.W. 140, 145. If in fact the act is by its terms or 'in its practical operation, it can only apply to particular persons or things of a class, then it will be a special or local law, however carefully its character may be concealed by form of words.' Dunne v. Kansas City Cable Co., 131 Mo. 1, 5, 32 S.W. 641, 642; State ex inf. Gentry v. Armstrong, 315

Mo. 298, 286 S.W. 705; State ex rel. Moseley v. Lee, 319 Mo. 976, 5 S.W.2d 83."[1]

■ MLRL is by its terms applicable to "all cities not within a county which now have or may hereafter have a population in excess of 500,000 inhabitants" and which elect to be subject to MLRL. Appellants' attack upon the appropriateness of this classification is based upon the omission from the class of cities having a population in excess of 500,000 inhabitants and located within a county.

There is a reasonable basis for the exclusion of such cities from MLRL. A city not within a county occupies a peculiar status as it performs not only municipal functions, but also county functions. In such a city, the delinquent taxes affected by MLRL are not limited to taxes for municipal purposes, but include state taxes and city taxes levied and collected for carrying out of the county functions of the city. See Hull v. Baumann, 345 Mo. 159, 131 S.W.2d 721, 724[3] (1939). A city within a county is not involved in the collection of taxes for state and county purposes. The legislative determination to apply MLRL to cities not within a county and not to all cities of a specified population is based upon reason and will, therefore, not be rejected by this court.

■ Appellants assert that § 92.875, subd. 2, which declares that the authority "is hereby created to foster the public purpose of returning land which is in a non-revenue generating nontax producing status, to effective utilization in order to provide housing, new industry, and jobs for the citizens of any city operating under the provisions of sections 92.700 to 92.920 and new tax revenues for said city," shows a legislative aim to aid the city as such and not to aid the state or the city in the performance of its county functions. The declaration of purpose found in § 92.875,

subd. 2 does not destroy the reasonableness of the classification employed by the legislature. If the purpose of the act is accomplished, the state and the city in the performance of its county functions as well as in the performance of its ordinary municipal functions will all benefit.

■■ Numerous cases recognize that a statute is not special under Article III, § 40(30), when it applies to municipal corporations by population rather than according to the seven classes of cities recognized by Article VI of the Constitution. See Walters v. City of St. Louis, 364 Mo. 56, 259 S.W.2d 377 (banc 1953), affirmed, 347 U.S. 231, 74 S.Ct 505, 98 L.Ed. 660 (1954). As pointed out in that case, the fact that only one city falls within the class does not make the legislation special as long as other cities may come within the class. Furthermore, the likelihood or unlikelihood of other cities becoming subject to the legislation is not significant, so long as the classification is reasonable and the legislation will admit any municipality attaining the necessary status. 259 S.W.2d 383[6].

Appellants have relied here primarily upon three cases as supporting their contention. The first is Hull v. Baumann, supra. In that case the court upheld the validity of a legislative enactment providing for the collecting of delinquent taxes in cities not within a county of a population between 200,000 and 400,000. § 11184, RSMo 1939. In that case, the classification was attacked on the grounds that the City of St. Louis, being the only city in the state not within a county, was the only city which could be subject to the act and therefore the population classification was unreasonable. The court rejected the contention, pointing out that the act applied to all counties and cities not within a county which may now or hereafter have a population in excess of 700,000. The court observed that it was possible at some time in

---

1. In Walters v. City of St. Louis, 364 Mo. 56, 259 S.W.2d 377, 383 [6] (banc 1953), the conclusion which the court reached in applying these principles in Reals v. Courson, supra, was overruled in part. The principles as stated in Reals v. Courson were not questioned.

the future a county would attain a population in excess of 700,000 and stated: "We think this fact makes the act a general and not a special law." 345 Mo. 159, 131 S.W. 2d 724. Because of this feature, the court was not called upon to decide and did not decide whether or not the act would have run afoul of the prohibition against special legislation had it been limited to cities not within a county. The reasoning of the later Walters case, supra, insofar as it relates to the likelihood of other municipalities coming within the classification does, as above pointed out, provide an answer to this question. That reasoning, rather than the silence of Hull v. Baumann, supra, should be followed here.

In the City of Charleston v. McCutcheon, 360 Mo. 157, 227 S.W.2d 736 (banc 1950), the court held invalid as a special law a statute (§ 14961, RSMo 1939) which provided a penalty for violation of a statute regulating the width of aisles in places of amusement when the violation occurred in a city, town or village where a court of competent jurisdiction was held. The discrimination there involved was clear. The presence of a court of competent jurisdiction had no reasonable relation to the regulation of the width of aisles in places of amusement and the statute was held invalid.

In Carson v. Baldwin, 346 Mo. 984, 144 S.W.2d 134 (1940), also relied upon by appellant, the law held special was one making a misdemeanor the blocking of a public crossing by a train for more than five minutes, except in cities of more than 10,000 inhabitants. § 4830, RSMo 1929. The court found the exclusion of cities of more than 10,000 without reason, noting that traffic problems in larger cities, excluded from the act, were greater than in those where the act applied so that there could be no reason for the classification. The court further pointed out the more strict limitation imposed upon criminal statutes which would make an act committed in one locality punishable as a crime but not if committed in another. 144 S.W.2d 136[7].

Neither the City of Charleston case nor the Carson case is of assistance to appellants in this case.

■ The conclusion that there is a reasonable basis for the classification adopted by the General Assembly answers appellants' second constitutional attack, based upon the equal protection clause of the Fourteenth Amendment to the Constitution of the United States and Article I, § 2, of the Constitution of Missouri. Hull v. Baumann, supra, 345 Mo. 159, 131 S.W.2d 726[10–13]; Walters v. City of St. Louis, 347 U.S. 231 (1954).

■ Appellants make a further attack upon the constitutionality of MLRL on the grounds that it is a local option statute which does not apply throughout the entire state. The petition on which the case was tried below makes no complaint on this ground. This court reviews only questions presented to the trial court. This is particularly true of constitutional questions. Laret Inv. Co. v. Dickmann, 345 Mo. 449, 134 S.W.2d 65, 70[8–11] (banc 1939); Rider v. Julian, 365 Mo. 313, 282 S.W.2d 484, 497[21–23] (banc 1955). The question here raised not having been raised below is not properly before this court.

Judgment affirmed.

BARDGETT, P. J., and HOLMAN, J., concur.

SEILER, J., not sitting.